**FILED**

JUN 2 3 2014

CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

|  |  |  |
|---|---|---|
| ROBERT REED, | * | CIV. 12-4086 |
|  | * |  |
| Petitioner, | * |  |
| -vs- | * | REPORT AND RECOMMENDATION |
|  | * |  |
| ROBERT DOOLEY and | * |  |
| MARTY JACKLEY, | * |  |
|  | * |  |
| Respondents. | * |  |
|  | * |  |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

Petitioner, Robert Reed, ("Reed") an inmate at the Mike Durfee State Prison, has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1). The Respondent has filed its Response, (Doc. 13), along with accompanying attachments, requesting Reed's Petition be dismissed with prejudice. Respondent has also provided the Court with the pertinent materials from the state court proceedings including the state criminal file, state habeas file, and all necessary transcripts and exhibits.[1] Reed has filed a Responsive Brief (Doc. 18). The matter is now ripe for decision.

## JURISDICTION

The pending matter was referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), Judge Schreier's Standing Order dated March 18, 2012.

## FACTUAL BACKGROUND

The facts are gleaned from the state court files and records, the trial transcript, and the various documentation and exhibits contained in the state court records. The Court has also reviewed Judge Srstka's February 10, 2011 Memorandum Opinion denying Reed's state habeas claim and the corresponding Findings of Fact and Conclusions of Law entered March 23, 2011. *See, Hood v.*

---

[1]Reference to the State Court record will be by "State Court Record" followed by the appropriate Bates stamp numbered page. Reference to the criminal trial transcript will be by "TT" followed by the appropriate page number. Reference to the state habeas evidentiary hearing transcript will be by "HT" followed by the appropriate page number. References to any exhibits will be by the appropriate transcript, followed by the Exhibit letter or number.

*United States*, 152 F.2d 431 (8th Cir. 1946) (federal District Court may take judicial notice of proceedings from another federal District Court); *Matter of Phillips*, 593 F.2d 356 (8th Cir. 1979) (proper for federal court to take judicial notice of state court pleadings); *Green v. White*, 616 F.2d 1054 (8th Cir. 1980) (Court of Appeals may take judicial notice of District Court filings).

RG and AD were young girls who lived in the same neighborhood and played together. TT 138. RG lived with her parents, while AD lived with her grandmother. *Id.* On October 23, 2004, RG's parents asked AD's grandmother if she would watch RG for a few hours while they ran errands. TT 164-65. AD's grandmother agreed. RG was six years old at the time. *Id.* The girls went to a neighbor (Reed's) house to play with his dog, as they had done before. TT 140. They knocked on his door, and he instructed them to come in. TT 141-43. 192. On a prior visit, Reed had given RG gifts including a teddy bear, a ring, sunglasses, playing cards, and some change. TT 141-43.

RG explained when she and AD went inside, Reed was in his bedroom, lying on the bed. RG testified that Reed helped both she and AD onto the bed with him, and said "my little childrens are keeping me warm." TT 143-44. She said then Reed held her down and "touched me in the wrong place." TT 144. RG was later interviewed by Colleen Brazil, a forensic interviewer at the Child's Voice in Sioux Falls, South Dakota. Ms. Brazil testified at trial about her interview with RG. RG also testified at trial. The material aspects of RG's interview with Ms. Brazil and RG's trial testimony were consistent. RG told Ms. Brazil and testified at trial that Reed touched her "boobs." TT 145. RG told the jury that Reed "keeps on going down and down" and that he was "rubbing" her "private." TT 146. She also explained Reed was "squeezing" her private. TT 147. Reed asked her if it felt good when he squeezed her "private" but RG told him it did not. TT 151. RG also testified at trial that Reed made her put her hand on his "private." She explained "I kept taking it off and he kept putting it on and he would hold it on there for a minute." TT 148. RG said it felt "gooey." *Id.* RG insisted that she and AD needed to leave Reed's house. TT 150.

AD did not want RG to tell anyone about the incident, but RG told AD's grandmother. TT 151. AD's grandmother was very upset; she immediately went to Reed's home and pounded on the door. TT 176, 178. He did not answer. She kicked the door. He did not answer. TT 178. AD's grandmother returned to her own home and called RG's home to leave RG's parents a message. TT

2

166. When RG's parents returned, they came to the grandmother's house to discuss what happened. RG's parents called the police. TT 170.

Detective Michael Webb reviewed RG's Child's Voice interview, then contacted Reed. TT 243. Reed came to the Sioux Falls Police Station for an interview with Webb.[2] TT 244. Reed never denied RG and AD had been in his home on October 23, 2004. His version of the events of that day, however, evolved significantly. Reed told the first police officer who interviewed him (Officer Jeff Garden) that the girls were in his home but never in his bed. TT 193. He told the next officer (Smedsrud) one of the girls was on his bed "a couple of times" but the only contact he'd had with the girls was when he shook their hands upon their arrival at his home. TT 205-06. When Reed spoke with Webb, however, he initially denied, but eventually admitted that sexual contact occurred between himself and RG. Reed claimed, however, that RG initiated the contact. EX 3.

## PROCEDURAL BACKGROUND

In November, 2004, Reed was indicted in Minnehaha County, South Dakota on charges of Sexual Contact with a Child Under the Age of Sixteen in violation of SDCL 22-22-7. Reed was also charged with a Part II Information as a habitual offender. A jury trial was held on May 2-3, 2005. Reed was convicted on two counts of Sexual Contact. Reed admitted the habitual offender charges.

Reed was subsequently sentenced to 25 years imprisonment on both Sexual Contact counts, to be served concurrently. Reed did not initially file a direct appeal. Reed filed a Petition for state habeas relief. Counsel was appointed, who filed an Amended and then a Second Amended state habeas Petition. The issues raised in Reed's Second Amended Petition for habeas corpus in the state court were:

1.  Ineffective Assistance of Counsel:
    a.  Failure to perfect Reed's appeal by failing to file a notice of appeal;
    b.  Failure to advise Reed subsequent to his conviction as to his right to an appeal from the trial court's decision;
    c.  Failure to adequately spend enough time meeting with Reed to discuss his rights and options prior to trial, including but not limited to whether Reed

---

[2]Both RG's interview with Colleen Brazil and Reed's interview with Detective Webb were videotaped, marked as exhibits and received into evidence during Reed's jury trial. The Court has reviewed both video tapes. (Reed's interview is EX 3, RG's interview is EX 4).

should take the stand, and how such testimony would be presented if Reed would elect to take the stand;

d. Failure to request a continuance in a more timely manner in order to adequately prepare for trial due to counsel's trial schedule regarding other cases;

e. Failure to object to questions asked by the deputy state's attorney during voire dire and trial which were argumentative, leading, or otherwise called for evidence otherwise inadmissible or irrelevant, in that, inter alia,

1. Questions posed to potential jurors went beyond those tailored to ascertain whether the jurors were qualified or would try to follow the court's instructions and went towards testing out the state's theory of the case;

2. Numerous questioned posed to the alleged victim were leading and/or argumentative in form;

3. Numerous questions posed to the alleged victim were either irrelevant, or if relevant, had a prejudicial effect outweighing any probative value (i.e. 'Did it feel good", "did you like it").

4. Questions posed to the alleged victim called for hearsay;

5. Questions posed to the alleged victim's mother and Dorothy Davis called for hearsay;

6. Questions posed to Colleen Brazil which lacked foundation and relevance;

f. Failure to object to the admission of physical evidence;

g. Failure to object during the deputy state's attorney's closing argument regarding objectionable arguments including inter alia, asking the jurors to put themselves in the place of the alleged victim or the accused, in a manner that could inflame the jury's emotions, or suggesting that they would react or talk to investigating officers differently if they were the accused, implicitly drawing attention to a defendant's right not to speak, testify or provide evidence to the police during their investigation or during trial.

h. Failure to schedule a competency hearing to determine the alleged victim's capacity to testify;

I. Trial counsel stipulated to Reed's identity, which is an element of the state's case.

The state court granted habeas relief because it found Reed's trial counsel did not adequately advise Reed of his right to appeal his judgment and sentence. Because the parties stipulated and the state court found Reed's trial counsel had not advised Reed of his right to appeal, the state habeas court did not reach or rule upon the other grounds raised in Reed's Second Amended state habeas Petition. Reed's judgment and sentence were vacated and he was remanded for re-sentencing to give him the opportunity to file a direct appeal. Reed was re-sentenced on March 27, 2009. On re-sentencing, the state court imposed the same sentence: 25 years imprisonment on each count, to be served concurrently. Reed then timely appealed his conviction. On direct appeal, Reed raised the following issues:

1.    Whether the trial court erred when it rejected defense counsel's request for a continuance of the trial after defense counsel indicated he did not spend any time on Reed's case?

2.    Whether the trial court committed plain error when it permitted the prosecutor to ask irrelevant and inflammatory questions concerning the victim's consent in a case where consent could never be a defense?

3.    Whether the trial court committed plain error when it permitted the prosecutor to invite jurors to put themselves in the place of Reed during closing argument?

4.    Whether the trial court committed plain error when it permitted the prosecutor to ask leading and unduly suggestive questions of the complaining witness?

On November 23, 2009, the South Dakota Supreme Court summarily affirmed Reed's conviction. *See State v. Reed*, 779 N.W.2d 167 (S.D. 2009). Thereafter, Reed returned to state court for a determination of the remaining issues raised in his state habeas Petition. The state court, the Honorable William Srstka presiding, held an evidentiary hearing on January 7, 2011. Judge Srstka issued a written opinion on February 10, 2011, denying Reed's state habeas Petition in its entirety. On January 9, 2012, the South Dakota Supreme Court denied a Certificate of Probable Cause. Reed filed the instant Petition for habeas corpus pursuant to 28 U.S.C. § 2254 on May 3, 2012.   Reed raised the same grounds for relief in his § 2254 Petition as he raised in his state habeas Petition. Additionally Reed raised the following grounds for relief in his § 2254 Petition:

•    Ineffective assistance of counsel: failure to raise the issue of Reed's competency during the process;[3]

•    Violation of Reed's Fourth Amendment Rights: Reed's home was searched without a search warrant. Reed is not aware of any evidence found as "there was none to be found."

•    Violation of Reed's right to be free from double jeopardy. He was re-sentenced to the same sentence after having prevailed on his first habeas. "[H]e is being held or subjected for the same offense twice. This brings the fact that he has had his life and limb in jeopardy a second time because the state messed up."

---

[3]Reed raised another issue (Ground III, Doc. 1, p.7 ) that was related to his mental competency which could be construed as a fourth unexhausted claim. His unexhausted "competency" issues were treated as one.

5

The Respondent moved to dismiss Reed's § 2254 Petition because, the Respondent asserted, it was a "mixed petition" which contained both exhausted and unexhausted claims. This Court recommended that Reed be given the opportunity to amend his federal § 2254 Petition to remove the unexhausted claims, or have his Petition dismissed in its entirety. The District Court adopted the undersigned's recommendation and ordered Reed to either amend his Petition to dismiss his unexhausted claims or have his entire Petition be involuntarily dismissed. Reed opted to amend his Petition and to pursue solely the claims which he has exhausted in state court.

## ANALYSIS

A state prisoner who believes he is incarcerated in violation of the Constitution or laws of the United States may file a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The federal courts are constrained, however by the Anti-Terrorism and Effective Death Penalty Act (AEDPA), to exercise only a "limited and deferential review of underlying state court decisions." *Osborne v. Purkett,* 411 F.3d 911, 914 (8th Cir. 2005). A federal court may not grant a writ of habeas corpus unless the state court's adjudication of a claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1). A state court decision is "contrary to" clearly established federal law if it "applies a rule that contradicts the governing law set forth in Supreme Court cases or if it confronts a set of facts that are materially indistinguishable from a decision of the Court and nevertheless arrives at a result different from the Court's precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A federal habeas court may not issue the writ merely because it concludes the state court applied the clearly established federal law erroneously or incorrectly. *Id.* at 411, 120 S.Ct. at 1495. "Rather, that application must also be *unreasonable*." *Id.* (emphasis added).

The state court's factual findings are presumed to be correct, and a federal habeas court may not disregard the presumption unless specific statutory exceptions are met. *Thatsaphone v. Weber*, 137 F.3d 1041, 1045 (8th Cir. 1998); 28 U.S.C. § 2254(e). A federal habeas court "may not simply disagree with the state court's factual determinations. Instead it must conclude that the state court's findings lacked even fair support in the record." *Marshall v. Lonberger*, 459 U.S. 422, 432, 103 S.C. 843, 850, 74 L.Ed.2d 646 (1983). It is with these general principles in mind that the merits of Reed's fully exhausted habeas claims are examined in turn below:

6

1.    **First Ground For Relief: Violation of Reed's Sixth Amendment Right to Effective Assistance of Counsel**

To successfully maintain a claim for ineffective assistance of counsel, a habeas petitioner must prove his counsel's performance was deficient and that he suffered prejudice as a result of the deficiency. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The *Strickland* Court explained, however that

> [T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in [any particular] order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.

*Id.* 466 U.S. at 697, 104 S.Ct. at 2069. To show prejudice, petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*, 466 U.S. at 694, 104 S.Ct. at 2052. Because hindsight analysis is problematical, courts "indulge a strong presumption that counsel's conduct falls within the wide range of professional assistance." *United States v. Staples*, 410 F.3d 484, 488 (8th Cir. 2005). Decisions involving trial strategy are therefore "virtually unchallengeable." *Link v. Luebbers*, 469 F.3d 1197, 1204 (8th Cir. 2006). Failure to file a motion that has little chance of success fails to meet *Strickland's* deficient performance or prejudice requirements. *Hale v. Lockhart*, 903 F.2d 545, 549 (8th Cir. 1990).

The Court must begin by presuming trial counsel was effective, and strategic choices are entitled to great deference. *Boyd v. Minnesota*, 274 F.3d 497, 502 (8th Cir. 2001). The Eighth Circuit has noted federal review of ineffective assistance claims in § 2254 petitions is particularly deferential: "Our review under 28 U.S.C. § 2254 of a state court's application of *Strickland v. Washington*, 466 U.S. 668, 687-88, 104 S.C. 2052, 80 L.Ed.2d 674 (1984) is twice deferential: we apply a highly deferential review to the state court decision; the state court, in turn, is highly deferential to the judgments of trial counsel." *Nooner v. Norris*, 402 F.3d 801, 808 (8th Cir. 2005) *cert. den.* 126 S.Ct. 2037, 164 L.Ed.2d 794 (2006). Reed asserts his counsel was ineffective in nine

specific ways.   His specific claims, and the manner in which these claims were addressed and decided by the state court, are each carefully considered.[4]

## A.   Failure to spend enough time meeting with Reed to discuss his rights and options prior to trial.

The gist of this claim is Reed's assertion that his trial counsel did not spend enough time discussing with him whether he should have testified on his own behalf at trial. Reed acknowledged during the state habeas hearing, however, that counsel advised him it was in Reed's best interest not to testify.  HT 128.  Reed acknowledged he believed his lawyer "knew what he was talking about maybe." *Id.* The trial judge (Judge Severson) also advised Reed (outside the presence of the jury) that Reed had the right to testify on his own behalf if he desired to do so. Reed indicated to the trial judge, however, that he'd discussed the issue with his lawyer and was comfortable with his decision not to testify.  TT 267.

Reed's trial counsel explained during the state habeas hearing that he advised Reed not to testify because Reed had three prior felony convictions and his video-taped interview with Detective Webb would be used to impeach him.  HT 70-71.  Counsel knew Reed would get "grilled" on cross-examination and there was nothing to be gained by Reed's testimony.  HT at 72.

Judge Srstka addressed this claim on page four of his Letter Decision and in Findings of Fact Nos. 23-36. Judge Srstka found that Reed had been advised of his right to testify but relied on his counsel's advice not to testify. Judge Srstka further found that had Reed testified, his testimony would have been effectively impeached by his prior felony conviction(s) and by his own previous video-taped statement. Judge Srstka concluded that had Reed testified, it would not have changed the outcome of the trial.

---

[4]Judge Srstka discussed the principles of law regarding ineffective assistance at length in his Letter Decision and his Findings of Fact and Conclusions of Law.  Judge Srstka cited *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), among other authorities.  He found that although Reed's state petition was "full of claims that his trial counsel's actions fell below an objective standard of reasonableness" (Conclusion of Law No. 29) Reed failed to meet his burden in this regard (Conclusion of Law No. 30).  Judge Srstka also found Reed failed to sufficiently allege or show prejudice.  Conclusion of Law No. 31.

A criminal defendant has a constitutional right to testify in his or her own defense. *Frey v. Schuetzle*, 151 F.3d 893, 897 (8th Cir. 1998). Given Judge Severson's above-cited on-the-record discussion with Reed, there can be no serious question that Reed knowingly and voluntarily waived his constitutional right. *El-Tabech v. Hopkins*, 997 F.2d 386, 389 (8th Cir. 1993) (habeas petitioner's conduct during criminal trial indicated waiver of right to testify). Reed's dissatisfaction with his decision does not render his decision involuntary or unknowing. *Frey*, 151 F.3d at 898. Reed asserts, however, that trial counsel's advice that he not testify was nevertheless ineffective.

Judge Srstka found Reed failed to show that trial counsel's advice to refrain from testifying was unreasonable, or that it was not sound trial strategy and as such, failed to show prejudice because of insufficient time spent together before trial. Memorandum Opinion at 4-5. *See also* Finding of Fact No. 26-36, Conclusion of Law No. 8-22, 29-33.

"[S]trategic choices of trial counsel are entitled to great deference." *Boyd v. Minnesota*, 274 F.3d 497, 502 (8th Cir. 2001) *quoting Strickland*, 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The state court's factual findings are fairly supported by the record, and it did not unreasonably apply clearly established federal law. It is therefore respectfully recommended to the District Court that this portion of Reed's First Claim for Relief be DENIED.

## B. Failure to request a Continuance in a Timely Manner in Order to Adequately Prepare for Trial

Reed asserts trial counsel was ineffective for failing to timely request a continuance so that he could adequately prepare for trial. During the state habeas hearing, counsel explained the case was re-scheduled several times. HT 37. Because cases are "stacked" when they are scheduled for trial in Minnehaha County, and Reed's case was not the first case in line, it was bumped the first few times it was scheduled for trial. *Id.* Eventually, the case was scheduled to be tried beginning May 23, 2005. The court administrator discovered, however, that a May 23 trial date would violate South Dakota's speedy trial act. HT 38. Trial counsel was notified, therefore, on April 27 (Wednesday) that Reed's trial would commence on Monday, May 2, 2005. Counsel was in court on other matters all day on Thursday, April 28, but on Friday, April 29 a hearing was held in Judge Severson's chambers on counsel's request to continue Reed's case. HT 39. Judge Severson denied the motion. HT 41. Counsel renewed the motion at the beginning of trial (before jury selection began), and

Judge Severson again denied the motion for a continuance. TT at 6-9.  Reed also raised the trial court's failure to grant the continuance as an issue on direct appeal, but the South Dakota Supreme Court summarily affirmed Reed's conviction.  Finding of Fact No. 49.

Judge Srstka discussed this ineffectiveness claim on page five of his Letter Decision and in Findings of Fact No. 37-50. Judge Srstka found that although trial counsel moved for a continuance in May, 2005, he informed the Court on March 29, 2005 he was ready for trial at that time. (Finding of Fact No. 46). Although he had little notice, trial counsel spent the weekend preparing for trial. Finding of Fact No. 47. Judge Srstka found no prejudice either from counsel's earlier failure to request a continuance or from the trial court's failure to grant the request when it was made.

Failure to file a motion that has little chance of success fails to meet *Strickland's* deficient performance or prejudice requirements. *Hale v. Lockhart*, 903 F.2d 545, 549 (8th Cir. 1990).  Trial counsel moved for a continuance within forty-eight hours of the time he was notified the trial had been rescheduled to May 2, 2005 instead of May 23, 2005.  The trial court rejected counsel's continuance motion, and the South Dakota Supreme Court summarily rejected Reed's claim that the trial court's decision resulted in prejudicial error to Reed.   Reed has made no showing that an earlier motion would have resulted in a difference in the outcome–either in the Court's ruling on the motion for continuance or that had a continuance been granted, the result of the proceeding would have been different.  The state court's factual findings are fairly supported by the record, and it did not unreasonably apply clearly established federal law.  It is therefore respectfully recommended to the District Court that this portion of Reed's First Claim for Relief be DENIED.

## C.    Failure to Fully Investigate Potential Witnesses In Order to Be Granted a Continuance.

Reed asserts trial counsel should have "fully investigated potential witnesses in order to be granted a continuance."  In his Brief, Reed alludes to expert witnesses which he believes could have opined about the "validity and accuracy" of RG's testimony. Doc. 18, p. 6. He also asserts counsel should have consulted an expert witness about the "effect  [Reed's] E.D.[5] had on him." *Id.*

---

[5]Erectile dysfunction.   This claim is discussed in Section D below.

Judge Srstka addressed this claim in his Letter Decision at page 5-6 and in his Findings of Fact No. 51-55. Judge Srstka rejected Reed's claim because Reed failed to produce any witnesses at the state habeas hearing who would have testified on his behalf during his criminal trial, let alone provide any testimony that would have changed the outcome of the proceedings. As such, Reed failed to prove deficient performance or prejudice. *Id.*

"[A] meaningful opportunity to present a complete defense does not translate into the right of a defendant to present any evidence he may deem important to his defense." *Strickland v. Lee*, 471 F.Supp.2d 557, 617 (W.D. N.C. 2007). Instead, to prove prejudice, the Petitioner must show that the uncalled witnesses would have testified in his defense, that their testimony would have been favorable, and that their testimony "probably would have changed the outcome of the trial." *See, Lawrence v. Armontrout*, 900 F.2d 127, 130 (8th Cir. 1990); *Stewart v. Nix*, 31 F.3d 741, 31 F.3d 741, 744 (8th Cir. 1994).

The state court's factual findings are fairly supported by the record, and it did not unreasonably apply clearly established federal law. It is therefore respectfully recommended to the District Court that this portion of Reed's First Claim for Relief be DENIED.

### D.   Failure to Introduce Evidence Pertaining to Reed's Erectile Dysfunction.

Next, Reed asserts his trial counsel was ineffective for failing to introduce evidence at trial regarding Reed's erectile dysfunction. Reed theorizes that had an expert on erectile dysfunction testified at trial, the outcome would have been different. [6]

During the state habeas hearing, the parties stipulated to the admission of a portion of Reed's medical records, including letters from two of his physicians. *See* EX 1 to State habeas transcript. The Court has reviewed the medical records and letters, which reveal Reed had been prescribed Viagra and Cialis in the months preceding the incident which formed the basis for his conviction. Neither the records nor the letters, however, support Reeds theory. Specifically, in their letters both

---

[6]This assertion is based on Reed's claim that such an expert would have discredited RG's testimony that she felt something "gooey" when Reed forced her hand onto his penis. *See* Reed's Brief, Doc. 18, p. 6-7.

physicians opined that Reed's erectile dysfunction condition would not necessarily affect his ability to emit semen.

Judge Srstka addressed this claim on page six of his Letter Decision, and in Findings of Fact No. 56-74. Judge Srstka found that Reed never told his counsel about his erectile dysfunction condition. He further found that the charges against Reed (sexual contact) did not require the perpetrator to have an erect penis. He found the medical records introduced during the state habeas hearing supported rather than discredited the victim's testimony.

Regarding expert testimony, while Reed criticized trial counsel's failure to retain an expert, he did not support the criticism with any specific expert testimony or opinions which would have changed the outcome of his trial. *See Ashker v. Class,* 152 F.3d 863, 876 (8th Cir. 1998); *Ellefson v. Hopkins,* 5 F.3d 1149, 1150-51 (8th Cir. 1993)(trial counsel's strategy to forego calling expert and rely on cross-examination of prosecution expert deemed not ineffective assistance of counsel). *See also Wildman v. Johnson,* 261 F.3d 832, 839 (9th Cir. 2001) (petitioner failed to show ineffective assistance because he did not demonstrate how his case was prejudiced by not retaining an expert; "[petitioner] offered no evidence that an . . .expert would have testified on his behalf at trial. He merely speculates that such an expert could be found. Such speculation, however, is insufficient to establish prejudice . . . speculating as to what [an] expert would say is not enough to establish prejudice.").[7]   The state court's factual findings are fairly supported by the record, and it did not unreasonably apply clearly established federal law. It is therefore respectfully recommended to the District Court that this portion of Reed's First Claim for Relief be DENIED.

### E.      Failure to Object to Questions Asked During Voir Dire and Trial.

Next, Reed asserts trial counsel was ineffective for failing to object to questions asked by the prosecution during voir dire and trial. In his Responsive Brief, however, (Doc. 18, p. 7-8) Reed cites no specific examples of prejudicial questions during voir dire. A claim on a § 2254 habeas corpus

---

[7]Reed did not really even offer speculation.   Neither Reed nor any other witness testified at the state habeas hearing to explain what expert testimony should have been presented during Reed's criminal trial.   Although some of his medical records and letters from his physicians were received, no purported expert report or testimony that supported his theory was received at the state habeas hearing.   Reed has offered nothing to prove that, if an expert had testified at his criminal trial, there would have been a reasonable probability that the outcome would have been different.

petition may be dismissed without a hearing if it is "based solely on vague, conclusory or palpably incredible allegations or unsupported allegations." *Brown v. Lockhart*, 781 F.2d 654, 656 (8th Cir. 1986) *quoting Machibroda v. United States*, 368 U.S. 487, 495, 82 S.Ct. 510, 514, 7 L.Ed.2d 473 (1962).

In his responsive Brief, Reed cites a few questions [8] the prosecutor asked the victim during her direct examination. Reed deems the questions "leading" and asserts trial counsel should have objected to them. (Doc. 18, p. 7-8). Trial counsel testified at the state habeas hearing he did not object because he did not believe the questions were objectionable. HT 77-78. He did not object to questions or argument if he did not believe his objection would be sustained. HT 78-79. This issue was the subject of Reed's direct appeal, but the South Dakota Supreme Court summarily affirmed Reed's conviction. Judge Srstka addressed this claim on page seven of his Letter Decision and in Findings of Fact No. 84-93. Judge Srstka found that in context, the questions asked to a six year old child were not objectionable and that Reed failed to show any prejudice by his counsel's failure to object.

This court's analysis must begin with the South Dakota Supreme Court's and Judge Srstka's determination that pursuant to South Dakota law, the prosecutor's questions to the minor victim were not objectionable, or at least not prejudicially so. An ineffective assistance of counsel claim cannot succeed when the "underlying objection would have been without merit." *Williams v. Norris*, 612 F.3d 941, 953 (8th Cir. 2010) (citations omitted, punctuation altered). In *State v. Weisentein*, 367 N.W.2d 201, 205 (S.D. 1985), the South Dakota Supreme Court cited SDCL 19-14-20[9] and held that a trial court does not abuse its "broad discretion" when it allows the use of leading questions in the direct examination of a child witness.

_____

[8] 1.  "Did he touch your privates?"
2.  "Did you have underwear on?"
3.  "What did he do with his hand?"
4.  "What did it feel like when he was squeezing it?"

[9]SDCL § 19-14-20 states in part: "Leading questions should not be used on direct examination of a witness except as may be necessary to develop his testimony."

In general, the admissibility of evidence is a matter of state law and does not give rise to constitutional error subject to redress in a federal habeas action. *Mendoza v. Leapley*, 5 F.3d 341, 342 (8th Cir. 1993).[10]   On habeas review "evidentiary errors are only relevant to the extent that presentation or admission of particular proof infringed on a specific constitutional protection or was so prejudicial as to deny due process. Only evidentiary errors that are so grossly prejudicial that they fatally infect the entire trial, preventing it from being fundamentally fair, will justify habeas corpus relief." *Henderson v. Norris*, 118 F.3d 1283, 1286 (8th Cir. 1997). Further, "a litigant is entitled to a fair trial but not a perfect one, for there are no perfect trials." *Canon v. Lockhart*, 850 F.2d 437, 439 (8th Cir. 1988) *quoting Brown v. United States*, 411 U.S. 223, 231-32, 93 S.Ct. 1565-1570-71, 36 L.Ed.2d 208 (1973) (other citations omitted, punctuation altered).   Judge Srstka determined the questions to which Reed believed his counsel should have objected were proper pursuant to South Dakota law and/or that Reed suffered no prejudice by counsel's failure to object. After having reviewed the trial transcript, this Court agrees. None of the prosecutors un-challenged questions allowed the admittance of evidence which was so grossly prejudicial that it fatally infected the entire trial, or prevented the trial from being fundamentally fair, thereby justifying habeas corpus relief. *Henderson v. Norris*, 118 F.3d 1283, 1286 (8th Cir. 1997).   The state court's factual findings are fairly supported by the record, and it did not unreasonably apply clearly established federal law. It is therefore respectfully recommended to the District Court that this portion of Reed's First Claim for Relief be DENIED.

### F.    Failure to Object to Admission of Physical Evidence.

Reed raised this issue in his Petition, but did not specify in his Petition or his supporting Brief which physical evidence admitted at trial he believed was objectionable or inadmissible. Judge Srstka addressed this issue on page seven of his Letter Decision and in Finding of Fact No. 96-100. Judge Srstka found that although Reed raised the claim, he failed to specifically identify any evidence which was improperly admitted into evidence at trial, either in his written submissions to the Court or during the state habeas evidentiary hearing. As such, Reed failed to carry his burden of proof and failed to show either deficient performance by counsel or prejudice.

---

[10]The federal courts have likewise held that "the child witness is a long-recognized exception . . ." to the rule that leading questions are generally prohibited during direct examination. *United States v. Butler*, 56 F.3d 941, 944 (8th Cir. 1995) *citing* Fed. R. Evid. 611(c) and *United States v. Nabors*, 762 F.2d 642, 650 (8th Cir. 1985).

A claim on a § 2254 habeas corpus petition may be dismissed without a hearing if it is "based solely on vague, conclusory or palpably incredible allegations or unsupported allegations." *Brown v. Lockhart*, 781 F.2d 654, 656 (8th Cir. 1986) *quoting Machibroda v. United States*, 368 U.S. 487, 495, 82 S.Ct. 510, 514, 7 L.Ed.2d 473 (1962).   Reed has offered nothing but a vague claim that improper physical evidence was admitted into evidence at his trial. He has therefore failed to show his counsel was ineffective for failing to object to admission of physical evidence. The state court's factual findings are fairly supported by the record, and it did not unreasonably apply clearly established federal law.  It is therefore respectfully recommended to the District Court that this portion of Reed's First Claim for Relief be DENIED.

### G.    Failure to Object to Closing Arguments.

Reed raised this issue on direct appeal and in his state habeas.[11] The South Dakota Supreme Court summarily affirmed, and Judge Srstka found that Reed failed to carry his burden to show counsel's performance was deficient or that Reed suffered any prejudice. Reed's counsel asserted in closing argument that Reed explained his actions and responded reasonably to Detective Webb's accusations against him in the video-taped interview which occurred several days after the incident. *See* TT at 280-283.[12] Reed's counsel encouraged the jury to review the video-taped interview again because he (counsel) believed Webb was trying to "trap" Reed by trying to put words into Reed's mouth or to say something he did not mean. TT at 282.  In the rebuttal portion of her closing argument, the prosecutor countered with the following statement:

> That question Mr. Carlson uses being a loaded question, and I am trying to make sure I get it. It's something like if someone says to you, you are gay and how do you respond? It's like you can't respond to that. I don't really–I am going to switch it a little bit and say what if someone said to me, you are a rapist? How do you respond to that? Mr. Carlson seems to think it's a loaded question. I would propose to you, members of the jury, that if someone said to you, you are a rapist, your immediate response would probably be in an irate tone, no, I am not. That's how you respond to that. You are a rapist. No, I am not. You abuse your children. No, I don't. That's how you respond to an accusation, which is what that is. That is simply not true. You touched [name redacted]. We know you touched [name redacted]. Did the defendant say no, I didn't. No. He said well, it was just for five minutes. No, maybe it was for a minute or two. I knew it was wrong. I told them to leave. He

---

[11]Reed raised the issue in his federal § 2254 Petition, but did not specifically address it in his supporting Brief.

[12]Although Reed did not testify at trial, the jury viewed the video-taped interview.

didn't say, as anyone else if you hadn't committed the crime–you would be livid. You would be livid if someone said that to you and you had not done that. You would say, I didn't. And damn it, I am out of here. How dare you make such an accusation. And this conversation is over with. That is how anyone would respond if they had been falsely accused.

TT at 283-84.

At the state habeas evidentiary hearing, trial counsel explained he did not object to the prosecutor's statements during closing argument because he perceived them as fair argument and he did not believe an objection would be sustained. HT 78-79. Judge Srstka addressed this claim on page 7-8 of his Letter Decision and in Findings of Fact No. 101-111. Judge Srstka found the counsel's trial strategy to avoid drawing attention to the prosecution's statements by making objections that were likely to be overruled was reasonable, and that Reed failed to show any prejudice by counsel's failure to object to the prosecutor's statements.

"Federal habeas relief should only be granted if the prosecutor's closing argument was so inflammatory and so outrageous that any reasonable trial judge would have *sua sponte* declared a mistrial." *Kennedy v. Kemna*, 666 F.3d 472, 481 (8th Cir. 2012) (citation omitted). Relief should be granted "only upon a showing of a reasonable probability that the outcome would have been different but for the improper statements." *Id.* (citation omitted). As in *Darden v. Wainright*, 477 U.S. 168, 182, 106 S.Ct. 2464, 2472, 91 L.Ed.2d 144 (1986), the prosecutor's remarks were an "invited response" to the defense summation. While the "invited response" does not excuse improper comments, the effect of the comments should be determined on the trial as a whole. *Id.* In *Darden*, the United States Supreme Court found the prosecutor's comments were not fundamentally unfair. *Id.* Important to this finding was its observation that the trial court "instructed the jurors several times that their decision was to be made on the basis of the evidence alone, and that the arguments of counsel were not evidence." *Id.*   Reed's jury was instructed as follows:

•       In Preliminary Jury Instruction No. 4:

It is your duty to decide from the evidence what the facts are and whether the defendant is guilty or not guilty of the crimes charged. You must base that decision on the facts and the law.

First, you must determine the facts from the evidence received in the trial and not from any other source.  . . .

•       In Preliminary Jury Instruction No. 5:

. . . .Certain things are not evidence.  Statements, arguments, questions and comments made by the attorneys during the trial are not evidence. . . .

*See* State Court Criminal Record, pp. 34-35.  In both *Kennedy* and *Darden* the Courts held that even assuming the prosecutor made improper comments, the petitioner failed to show prejudice which would justify habeas relief.  "[Petitioner's] trial was not perfect–few are–but neither was it fundamentally unfair."  *Darden v. Wainright*, 477 U.S. 168, 183, 106 S.Ct. 2464, 2472, 91 L.Ed.2d 144 (1986).

The same is true here.  Both Judge Srstka and the South Dakota Supreme Court correctly found that Reed failed to show that the prosecutor's closing argument was so inflammatory that it rendered Reed's trial fundamentally unfair.  The state courts' factual findings are fairly supported by the record, and they did not unreasonably apply clearly established federal law.  It is therefore respectfully recommended to the District Court that this portion of Reed's First Claim for Relief be DENIED.

## H.    Failure to Schedule a Competency Hearing to Determine the Victim's Capacity to Testify.

Next, Reed asserts his counsel was ineffective for failing to schedule a competency hearing to determine RG's (the six-year old victim's) competency to testify at trial.  RG testified at trial and the jury was allowed to view the video tape of her interview with Colleen Brazil.

On April 27, 2005, the State provided notice of its intent to offer RG's statements pursuant to SDCL § 19-16-38.  *See* State Court Criminal Record at 72.  That statute provides:

**19-16-38. Statement of sex crime, physical abuse, or neglect by victim under age ten or developmentally disabled.**
A statement made by a child under the age of ten, or by a child ten years of age or older who is developmentally disabled as defined in § 27B-1-3, describing any act of sexual contact or rape performed with or on the child by another, or describing any act of physical abuse or neglect of the child by another, or any act of physical abuse or neglect of another child observed by the child making the statement, not otherwise admissible by statute or court rule, is admissible in evidence in criminal proceedings against the defendant or any proceeding under chapters 26-7A, 26-8A, 26-8B, and 26-8C in the courts of this state if:
(1) the court finds, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances of the statement provide sufficient indicia of reliability; and

(2) the child either:
      (a) testifies at the proceedings; or
      (b) is unavailable as a witness.
However, if the child is unavailable as a witness, such statement may be admitted only if there is corroborative evidence of the act.
No statement may be admitted under this section unless the proponent of the statement makes known his intention to offer the statement and the particulars sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet the statement.

Reed's counsel testified at the state habeas hearing that he reviewed RG's video-taped interview with Colleen Brazil and did not believe a challenge to RG's competency would be viable. HT 64. Before RG was allowed to testify at trial, the judge noted that a competency finding should be made on the record. TT 135. After a series of questions by the prosecutor to determine if RG knew the difference between the truth and a lie, and the consequences of telling a lie, the Judge specifically found RG was competent to testify. TT 137.

Judge Srstka addressed this issue on page nine of his Letter Decision and in Findings of Fact No. 112-125. Judge Srstka found there was no basis to challenge the competency of the six-year old child victim, and trial counsel was not objectively unreasonable in failing to do so. Judge Srstka's independent review of the trial transcript and RG's video-taped interview revealed that RG had "sufficient mental capacity to observe, recollect, and communicate, and some sense of moral responsibility." Finding of Fact No. 117. Judge Srstka found that even if counsel was deficient by failing to request the competency hearing prior to trial, Reed suffered no prejudice due to the deficient performance. Finding of Fact No. 125. Reed's own habeas expert conceded that had a pre-trial competency hearing been held, RG would have been found competent to testify. Finding of Fact No. 122, HT at 100.

First, RG's competency and the admissibility of her testimony are purely matters of state law. "Questions concerning the admissibility of evidence are matters of state law, and are reviewable in federal habeas corpus proceedings only when the alleged error infringes upon a specific constitutional protection or is so prejudicial that it amounts to a denial of due process." *Ferguson v. Jones*, 905 F.2d 211, 213 (8th Cir. 1990) (citation omitted). Second, the competency examination was conducted, albeit in the presence of the jury rather than outside its presence. Reed has presented no persuasive argument, however, that Judge Severson's credibility finding would have been

different had the hearing been conducted outside the jury's presence. The federal courts presume children are competent to testify. *United States v. Kelly*, 436 F.3d 992, 996 (8th Cir. 2006); Fed. R. Evid. 601. Generally, the jury is capable of weighing the credibility of the child's testimony. *Id.* In this case, the trial judge and the state habeas judge determined RG was competent to testify. That the competency hearing was held immediately before RG's trial testimony rather than during a pretrial proceeding is not a procedural error which "infringes upon a specific constitutional protection or is so prejudicial that it amounts to a denial of due process." *Ferguson v. Jones*, 905 F.2d 211, 213 (8th Cir. 1990) (citation omitted). The state courts' factual findings are fairly supported by the record, and they did not unreasonably apply clearly established federal law. It is therefore respectfully recommended to the District Court that this portion of Reed's First Claim for Relief be DENIED.

## I.    Counsel Should Not Have Stipulated To Reed's Identity.

Reed's final claim is that his counsel should not have stipulated to his identity at trial. Specifically, during RG's testimony the prosecutor asked her if the man who she had been talking about, and whose name she said was Robert was in the courtroom. TT at 153. After RG pointed to Reed, the prosecutor asked RG to describe the color of Reed's shirt. *Id.* At that time, defense counsel stated "we will stipulate to identity for this witness." *Id.* In his Brief (Doc. 18, p. 10) Reed theorizes that because the state collected no DNA evidence, counsel was ineffective for stipulating to his identity, because in the absence of said stipulation the evidence would have been insufficient to convict him. *Id.*

During the state habeas evidentiary hearing, counsel explained he stipulated to Reed's identity because identity was not an issue in the case. HT 80. He explained that during Reed's interview with Detective Webb, Reed did not claim someone else had committed the acts in question, but rather admitted sexual contact occurred between himself and RG, but claimed RG initiated the contact. *Id.* at 82.

Judge Srstka addressed this issue on page nine of his Letter Decision and in Findings of Fact No. 126-136. Judge Srstka found that identity was not an issue in the case. He further found Reed's defense was to deny the incidents occurred and/or that he had the requisite intent to have committed the crime. Judge Srstka further found that trial counsel's trial strategy of stipulating to Reed's identity was prudent and sound, because he sought to defuse an "emotionally charged" moment by

19

relieving the six-year old child victim from having to identify her perpetrator based on the clothing he was wearing in court. Finding of Fact No. 131. Further, at least two other witnesses made in-court identifications of Reed. Finding of Fact No. 132, 133.

To successfully maintain a claim for ineffective assistance of counsel, Reed must prove his counsel's performance was deficient and that he suffered prejudice as a result of the deficiency. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Decisions involving trial strategy are "virtually unchallengeable." *Link v. Luebbers*, 469 F.3d 1197, 1204 (8th Cir. 2006). *See also Dokes v. Lockhart*, 992 F.2d 833 (8th Cir. 1993) (stipulation to unfavorable testimony of state's witness not ineffective assistance because it was reasoned choice of trial strategy). Judge Srstka's finding that counsel's stipulation to Reed's identity did not constitute deficient performance and did not cause prejudice to Reed is fairly supported by the record and is not an unreasonable application of clearly established federal law. It is therefore respectfully recommended to the District Court that this portion of Reed's First Claim for Relief be DENIED.

## CONCLUSION and RECOMMENDATION

Reed's habeas corpus claims were adjudicated on the merits in state court on direct appeal and in a habeas corpus action where he was represented by court-appointed counsel. Reed has failed to satisfy his burden of rebutting the presumption of correctness of the state courts' adjudication by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). The state courts' determination was not contrary to, nor did it involve an unreasonable application of clearly established federal law (*Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984)), and was a reasonable determination of the facts in light of the evidence presented in the state habeas proceeding. *See* 28 U.S.C. § 2254(d).

Reed has failed to make a "substantial showing of the denial of a constitutional right." A certificate of appealability should not be issued in his case. 28 U.S.C. § 2253(c)(2). Although 28 U.S.C. § 2253(c)(2) has been found to be "only a modest standard," Reed has not shown that "the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement or to proceed further.'" *Randolph v. Kemna*, 276 F.3d 401, 403 n.1 (8th Cir. 2002) (citations omitted).

Therefore, it is respectfully RECOMMENDED to the District Court that:

(1)     Reed's Application for Writ of Habeas Corpus as Amended (Doc. 1 and Doc. 11) and all supplements and amendments thereto be DISMISSED with prejudice; and

(2)     Respondent's Request to  to Dismiss the Petition without an evidentiary hearing (Doc. 13 and 21) be GRANTED;

(3)     A Certificate of Appealability should not be issued;

(4)     Reed's Motion for Evidentiary Hearing (Doc. 20) be DENIED.

## NOTICE TO PARTIES

The parties have fourteen (14) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require de novo review by the District Court. *Thompson v. Nix*, 897 F.2d 356 (8th Cir. 1990); *Nash v. Black,* 781 F.2d 665 (8th Cir. 1986).

Dated this **23** day of June, 2014.

BY THE COURT:

John E. Simko
United States Magistrate Judge